IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:07-cv-00736-JLK

EMILY TOMPKINS, HARMONY ADAMS, KIRA ANDRES, TAMARA ARENDT,
EMORY ARIANO, CAROL BAKER, STEPHEN M. BARONE, MELISSA BECKO,
KRISTEN BENECK, RAMONA BERRY, DAVID BONDARCHURCH, BRANDON C.
BOURRET, DENISE BOURRET, LOU ANN CAMERON, CINDY CAMP, MIKE
CLARK, TRACY COLE, TODD COLE, SANDRA CRAFT, MIRANDA DANIELE,
DIANN DECKER, TONI DENHAM, CARLA DETWILER, CARL DICKSON, BETH
DOMBROSKI, SARA DOSCH, KATERNINE FEIGHT, RICHARD FEIGHT, SUSAN
FORESMAN, DENISE FORSYTH, BRUCE FOSTER, MICHELLE GODE, RHONDA
GOOD, JANET GOODWIN, KIM GORGENS, LAURA GORRELL, VICTORIA
GOSTEVA, CAROL GRETZ, WILLIAM GRETZ, TODD HANSON, RENE HANSON,
CAROL HAUGH, MARK HEATON, KAMI HUFF, ALLISON JERNIGAN,
LORRAINE JOHNSON, JASON KATZ, JESSICA KATZ, RICHARD KAY,
PATRICIA KAY, DONNA KEAN, CLARISSA KING, VIRGINIA KOSLOW,
CANDACE LAROSE, LEMECIA LANDRUM, JOHN LOGAN, THERESA LUNA,
DEBORAH MASSO, CONNIE McKINNEY, DANNY MICKEY, LOIS MITCHELL,
ERYN MULLOY, STACY NEWMAN-ROOLF, LISA NICHOLS, JO ANN OAKLIEF,
RICK OBERNOLTE, JEN OLBRICHT, LORRIE PARADISO, GERALDINE
PAULEY, CRYSTAL PICKETT, CYNTHIA POOLE, LYNN PUSILIO, ERICA
RAMBUS, JUSTIN REVENE, BROOK REVSTOCK, TRACY RICHARDSON, JON
ROBERTS, EVELYN SEEMAN, MICHAEL SENA, STEPHANIE SHEME, JUDY
SHOPE, SANDRA SMITH, RANDY ST. ONGE, STEPHEN TERRELL, MARY JO
THOMAS, MARY KAY URBAN, CLAIRE WALTER, PRUDENCE WALTERS,
JETHRO WAGNER, DON WARN, ROBERT WEISS, IAN WHITE, KURT WHITT,
KENNETH WHITTEN, LARUIE WOODMAN, TERESA ZANKIEWICZ and DEBBIE
ZEIGLER individually and on behalf of all others similarly situated, as well as others to
be named individually.

        Plaintiff,

v.

MENU FOODS MIDWEST CORPORATION; MENU FOODS INCOME FUND;
MENU FOODS LIMITED; MENU FOODS, INC.; MENU FOODS HOLDINGS, INC.;
THE PROCTER & GAMBLE COMPANY; THE IAMS COMPANY; SAFEWAY,
INC.; THE KROGER CO.; PETCO ANIMAL SUPPLIES STORES, INC.; PETCO
ANIMAL SUPPLIES, INC..; PETSMART, INC.; HILL'S PET NUTRITION, INC.;
HILL'S PET NUTRITION SALES, INC.;  COLGATE–PALMOLIVE COMPANY;
WALMART, INC.; CHEMNUTRA, INC.; XUZHOU ANYING BIOLOGIC
TECHNOLOGY DEVELOPMENT COMPANY; BINZHOU FUTIAN BIOLOGY
TECHNOLOGY CO. LTD.; WILBUR-ELLIS; NESTLE PURINA PETCARE
COMPANY; SUNSHINE MILLS, INC.; AMERICAN NUTRITION, INC.; BLUE

Dockets.Justia.com

BUFFALO COMPANY; NATURAL BALANCE, INC.; DIAMOND PET FOODS; SIERRA PET PRODUCTS, LLC; CEREAL BYPRODUCTS; ROYAL CANIN; SMART PAK; CJ FOODS; FOSTER AND SMITH, INC d/b/a DOCTORS FOSTER AND SMITH; DEL MONTE FOODS COMPANY; DEL MONTE CORPORATION; M&M MARS INCORPORATED; MASTERFOODS U.S.A.; WALTHAM; DIAMOND PET FOODS; CHENANGO VALLEY PET FOODS; and JOHN DOES 1-100.

     Defendants

---

## FIRST AMENDED COMPLAINT

---

## I. PARTIES

**PLAINTIFFS**

1. Plaintiffs are citizens of the State of Colorado, except as follows:

2. Plaintiff Baker is a citizen of Wyoming.

3. Plaintiff Cameron is a citizen of Kansas.

4. Plaintiff Daniele is a citizen of New Mexico.

5. Plaintiff Detwiler is a citizen of New Mexico.

6. Plaintiff Gode is a citizen of Florida, but was a citizen of Colorado at the time of the recall.

7. Plaintiff Koons is a citizen of Kansas.

8. Plaintiff Luna is a citizen of New Mexico.

9. Plaintiff Roberts is a citizen of Nebraska.

10. Plaintiff Terrell is a citizen of Texas.

11. Plaintiff Urban is a citizen of Kansas.

**DEFENDANTS**

12. Defendant Xuzhou Anying Biologic Technology Development Company Ltd. ("Xuzhou"), the exporter and/or originator of the wheat gluten ingredient which tainted pet food products at issue, is a foreign company with its principal offices located at Wangdigan Industrial Zone, Peixan, CN-32, China 221623.

13. Defendant ChemNutra Inc. ("ChemNutra") has its principal place of business in the State of Nevada, and purports to import "…quality ingredients to the U.S. for the feed, food and pharma industries…," to deliver "…high-quality chemicals and ingredients from quality-assured manufacturers in China," and to "specialize" in "Vital Wheat Gluten".  (www.chemnutra.com.)

14. Defendant Binzhou Futian Biology Technology Co. Ltd ("Binzhou") is the exporter and/or originator of the rice protein concentrate ingredient, which tainted pet food products at issue, is a foreign company with its principal offices located at No.11 Yuanqian Wudi, Binzhou, Shandong, China 251900.

15. Defendant Wilbur-Ellis Company ("Wilbur-Ellis) is a California Corporation, with its principle place of business in California.

16. Defendant Menu Foods Income Fund (or the "Fund") is an unincorporated open-ended trust created in the year 2002 with its principal place of business in Streetsville, Ontario, Canada.

17. The Fund owns and controls Defendant Menu Foods Limited, a Canadian company with its offices in Mississauga, Ontario, which, on information and belief, manages Menu Foods' United States operations and manufacture of the pet food products at issue.

18. Defendant Menu Foods Income Fund ("the Fund"), and Defendant Menu Foods Limited each claim to be the leading North American private-label manufacturer of so-called "wet pet food products", which are sold by supermarket retailers, mass merchandisers, pet specialty retailers and other retail and wholesale outlets.

19. Defendant Menu Foods Midwest Corporation has its principal place of business in Emporia, Kansas, and is wholly owned by Menu Foods Holdings, Inc.  Most of the contaminated pet food batches originated from Menu Foods' manufacturing plant in Emporia, Kansas, which on information and belief is operated by Menu Foods Midwest Corporation.

20. Defendant Menu Foods Inc., a New Jersey corporation wholly owned by Menu Foods Holdings, Inc., made some of the pet food products at issue.

21. Defendant Menu Foods Holdings, Inc. is wholly owned by Menu Foods Limited and organized under the laws of the State of Delaware, and, on information and belief, holds the assets and/or securities of the Menu Foods Defendants' manufacturing facilities in the United States, including plants located in Kansas and South Dakota.

22. The actions of Menu Foods Income Fund alleged herein are undertaken on behalf of itself and each of these Menu Foods entities, who acted as agents for each other when perpetrating the conduct herein alleged and who do business under the name "Menu Foods."

23. Defendant, The Procter & Gamble Company ("P&G"), which acquired, and does business as The Iams Company, is an Ohio corporation with its principle place of business in Ohio.

24. Defendant, The Iams Company ("Iams") is a corporation with its principle place of business in the State of Ohio, is a citizen of that State, and is owned by P&G.

25. Menu Foods makes the Eukanuba® and Iams® brand pet food products at issue for the P&G Defendants.

26. Defendants Hill's Pet Nutrition, Inc. and Hill's Pet Nutrition Sales, Inc. (collectively, "Hill's") each has its principle place of business in Kansas.

27. Defendant Colgate-Palmolive Company ("Colgate") is organized under the laws of the State of Delaware, and does business through its subsidiaries, Hill's Pet Nutrition, Inc. and Hill's Pet Nutrition Sales, Inc.

28. Defendant Del Monte Foods Company, (collectively with Del Monte Corporation as "Del Monte") is organized under the laws of the State of Delaware and its principle place of business is in California.

29. Defendant Del Monte Corporation, (collectively with Del Monte Foods Company as "Del Monte") is organized under the laws of the state of New York and its principle place of business is in California.

30. Defendant Nestle Purina Pet Care Company ("Nestle") is organized under the laws of the state of Missouri and its principle place of business is in Colorado.

31. Defendant Sunshine Mills ("Sunshine") is organized under the laws of Alabama and its principle place of business is in Alabama.

32. Defendant Foster and Smith, Inc d/b/a Drs. Foster and Smith is organized under the state of Wisconsin and its principle place of business is in Wisconsin.

33. Defendant American Nutrition, Inc. is organized under the laws of Utah and its principle place of business is in Utah.

34. Defendant Diamond Pet Foods is organized under the law of Missouri and its principle place of business is in Missouri.

35. Defendant Blue Buffalo, Ltd. is organized under the laws of Delaware and its principle place of business is in New York.

36. Defendant Natural Balance, Inc. is organized under the laws of California and its principle place of business is in California.

37. Defendant Sierra Pet Products, LLC is organized under the laws of Nevada (previously in Delaware) and its principle place of business is in Nevada.

38. Defendant Cereal Byproducts is organized under the laws of Illinois and its principle place of business is in Illinois.

39. Defendant Royal Canin USA is organized under the laws of Delaware and its principle place of business Missouri.

40. Defendant Mars, Inc is organized under the laws of Delaware and its principle place of business is in McLean, Virginia.

41. Defendant Masterfoods USA and Defendant Waltham are each organized under the laws of Delaware and have principle places of business in New Jersey and California.

42. Defendant CJ Foods is organized under the laws of Nebraska and its principle place of business is in Kansas.

43. Defendant Chenango Valley Pet Foods is organized under the laws of New York and its principle place of business is in New York.

44. Defendants, Petco Animal Supplies, Inc. and Petco Animal Supplies Stores, Inc., ("Petco",) are each organized under the laws of the State of Delaware, share

common officers and offices, and marketed and sold pet food products at issue on their website and in their "PETCO" retail stores in Colorado and nationwide.

45. Defendant Petsmart, Inc. ("Petsmart") is organized under the laws of the state of Delaware and its principle place of business is in Arizona.

46. Defendant, Safeway Inc. is organized under the laws of the state of Delaware, and principle place of business is in Arizona.

47. Defendant, The Kroger Co. ("Kroger"), has its principal place of business in the State of Ohio, and owns and operates retail supermarkets doing business under such names as King Snoopers, Ralphs, Kroger, City Market, Dillions, Smith's Food & Drug Stores, Fry's, QFC, Baker's, Owen's, JayC, Hilander, Gerbes, and Pay Less. The Kroger Co. marketed and sold pet food products at issue at its retail supermarkets in Colorado and nationwide.

48. Defendant Wal-Mart Stores, Inc. is organized under the laws of Delaware and its principle place of business is in Arkansas.

49. The true names and capacities of the Defendants sued in this Complaint as Does 1-100, inclusive, are currently unknown to Plaintiffs, who therefore sue such Defendants by such fictitious names. Each of the Defendants designated herein as a Doe Defendant is legally responsible in some manner for unlawful acts referred to in this Complaint. Plaintiffs will seek leave of the Court to amend this Complaint to reflect the true names and capacities of the Defendants designated herein as Doe Defendants when such identities become known.

## II. JURISDICTION AND VENUE

50. Venue is proper in this District pursuant to 28 U.S.C. § 1391. Defendants systematically and continually do business in this District and in the State of Colorado. Transactions giving rise, in substantial part, to each Plaintiff's action occurred in this District.

51. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332. The total amount at issue in this case exceeds $5,000,000.

## III. GENERAL ALLEGATIONS

52. This is a class action seeking punitive damages and/or other redress for consumers who purchased pet food products made from raw materials developed, manufactured, produced, distributed, exported, and imported by Defendants as described herein and recalled in March 2007 or thereafter.

53. This is a class action seeking punitive damages and/or other redress for consumers who purchased pet food products designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter.

54. Due to Defendants' conduct, not only are many affected pet owners mourning the loss of their pets, but also, pet owners have incurred and will continue to suffer damages including veterinarian bills, cremation expenses, pet food costs, loss to business and livelihood, and ongoing medical care.

55. Individually and/or collectively, the Defendants caused pet food products at issue to be placed in the stream of commerce in the State of Colorado and in the United States.

56. China detained two managers identified as having worked for Xuzhou Anying Biologic Technology Development Co. Ltd. and Binzhou Futian Biology Technology Co. Ltd., both listed as having exported melamine-spiked rice protein and wheat gluten to the U.S.

57. Defendant Binzhou exported from its China location rice protein concentrate contaminated with melamine.

58. Defendant Xuhou exported from its China location wheat gluten contaminated with melamine.

59. Xuhou claims to stick to the tenet of "Sincere and Keeping Promise (sic)," and "Putting Quality at the First Place (sic)."

60. The melamine was used by both Xuhou and Binzhou is an industrial chemical used intentionally to artificially inflate the protein content, even thought the chemical has no nutritional value.

61. The pet food recall was one of many recent recalls from China. In addition to pet food, toys, toothpaste, tires and growing list of other items have also been involved in recent recall initiatives.

62. By listing the goods shipped from China as "nonfood items," the company's shipments were not subject to mandatory inspection by the Chinese government. Though a violation of export policies, such mislabeling is thought to be widespread in China (www.nytimes.com/2007/05/03/business/worldbusiness/03food.html).

63. The products shipped to the United States from 2006 to 2007 contained "minimal labeling" to indicate whether it was intended for humans or animals. The vast majority went to pet food manufacturers and distributors, according to the FDA.

But some of the processing plants that remain under FDA scrutiny make both human and pet food.

64. ChemNutra provided pet food manufacturers wheat gluten, which the U.S. Food & Drug Administration (FDA) has reported to contain melamine, and which the FDA has identified as one source of the contamination in the pet food recalled by pet food companies.

65. A lawsuit was filed May 21, 2007 by Menu food as a result of the tainted pet food ingredient that was supplied to them by ChemNutra. Menu Foods is asking for damages substantially in excess of $75, 000.

66. Menu Foods Defendants procured the wheat gluten, which originated more than 6000 miles away in China for production of the pet food at issue at its Emporia manufacturing plant in the State of Kansas, known as the "Wheat State" and the number one U.S. producer of wheat gluten.

67. Defendant Menu Foods makes the food found in about 100 varieties of the recalled pet food products at issue.

68. Defendants, Menu Foods Income Fund, Menu Foods Limited, Menu Foods Midwest Corporation, Menu Foods Holdings, Inc., and/or Menu Foods, Inc., (collectively, "Menu Foods"), individually and collectively caused the pet food products at issue in this action to be manufactured and designed, for or on behalf of other co-Defendants in this action and a host of other brands, producers, marketers and sellers of the pet food products at issue, for sale to consumers in Colorado and in other States nationwide.

69. Menu Foods, despite learning of the danger to pets' health in their pet food products days, weeks, and even months before March 16, 2007, did not announce a pet food recall, or provide any public notice of such dangers, until that date.

70. Menu Foods Income Fund's self-styled operating tenets are to "manufacture the private-label wet pet food industry's most comprehensive product program with the highest standards of quality" and to "satisfy the requirements of the ultimate consumers (i.e., dogs and cats)."  In reality, Menu Foods falls far short of these tenets, to the detriment of affected pet owners like Plaintiffs.

71. Menu Foods Income Fund announced, on March 16, 2007, the recall of "cuts and gravy" style pet food in cans and pouches, which the Menu Foods Defendants caused to be manufactured between December 3, 2006 and March 6, 2007, at two of their United States facilities, for more than 90 pet food brands purchased by Plaintiffs and the other Class members, including without limitation "Nutro" brand pet food products – herein, the pet food products at issue.  The Fund stated at that time that products not identified in the recall could continue to be used.

72. On March 16, 2007, Menu Foods Income Fund also announced that the recall dates coincided with the introduction of an ingredient from a new supplier, and that it had received complaints about the impact on the renal health of the pets consuming the products at issue.

73. However, Menu Foods discontinued using the supplier of the ingredient, which they believed to be attributable to the contamination of pet food products at issue, on March 6, 2007 – a full ten days prior to announcing the recall.

74. In fact, Menu Foods reported to the FDA that it had received complaints that cats and dogs that had eaten its food had died or experienced kidney failure as early as February 20, 2007, almost one month prior to the recall.

75. Menu Foods received similar telephone complaints long before the recall, as early as December 2006, from pet owners indicating that their pets had fallen ill from eating the very same "cuts and gravy" style pet food products at issue.

76. Weeks before the recall, Menu Foods, instead of alerting the public, initiated food "tasting trials" resulting in the death of seven of the forty to fifty dogs and cats tested, by March 2, 2007, five days after the testing started.

77. Despite such red flags well before the recall, Menu Foods held off on the recall until March 16, 2007, and at that time announced only that the recall was purely precautionary and merely a "proactive step out of an abundance of caution, because the health and well being of pets is paramount to the (Menu Foods Income) Fund."

78. It was not until March 24, 2007, that the Menu Foods Defendants widened the recall to include all of their previously recalled brands manufactured at any time including those manufactured prior to December 3, 2006.

79. On April 5, 2007, the Menu Foods Defendants expanded the recall again to include an even broader range of dates and varieties.  A Menu Foods Income Fund press release, on April 5, 2007 announced "an expansion of its recall to include all products manufactured with wheat gluten purchased from ChemNutra Inc. which Menu Foods' records show was first used on November 8, 2006 and last used on March 6, 2007."

80. The recall expansion was announced on the heels of disclosure that ChemNutra announced its own recall of wheat gluten it imported from Xuzhou Anying Biologic Technology Development Co. Ltd located in China. According to the FDA, ChemNutra provided the contaminated wheat gluten used in the recalled pet food and sample testing of the products revealed the presence of melamine.

81. In the wake of the unprecedented pet food recall, Menu Foods has nonetheless disclosed that expansion plans for its pet food operations are under consideration, despite quality concerns with their products and the extensive damage they have caused to pet-owning consumers.

82. The delay in issuing the recall and Menu Foods' receipt of complaints about "cuts and gravy" style pet food as early as December 2006, coincide with the eligibility of the principals, investors and/or trustees of Menu Foods Defendants to obtain cash disbursements from the Fund, which were only recently unattainable.

83. Due to Menu Foods Income Fund's previous debt ratio, it was prohibited from making monthly cash or other distributions, to its members including holders of its Trust Units or Class B Exchangeable Units between December 2005 until September 2006, and to which its members had become accustomed prior to that time.

84. The individuals presiding on the board of trustees of the Fund, and the directors and/or officers of Menu Foods GenPar Limited, which administers the Fund, are investors in Menu Foods and hold such Units.

85. This is not the first time that Menu Foods Defendants have put their corporate welfare, financial interest, or public image ahead of safety concerns.

86. On May 19, 2004, the Food & Drug Administration issued a Warning Letter to one of the Menu Foods Defendants revealing its "significant deviation" from federal regulations pertaining to prohibited animal proteins in ruminant feed. The regulation(s) were intended to prevent the establishment and spread of Bovine Spongiform Encephalopathy ("BSE").[1] Though the regulation(s) required the use of a cautionary statement regarding BSE, the Menu Foods Defendant introduced the product into interstate commerce in October 2003 without the required statement. (Center for Veterinary Medicine, Fiscal Year 2004 Report.)

87. The Menu Foods violation occurred despite the fact that in 2003, BSE discovered in the United States and in Canada resulted in the closure of the Mexican and Canadian borders to United States-made pet food and a temporary suspension of Menu Foods product shipments from its Canadian operations.

88. Moreover, Menu Foods was all too aware of the federal regulation pertaining to BSE prior to October 2003. In February 2003, Menu Foods, as a member of the Board of Directors for the Pet Food Institute, unsuccessfully lobbied the FDA not to adopt the regulation that it later violated, expressly on grounds that such a caution statement on pet food product labels would cause consumer perception regarding product safety to decline and result in economic damage. (Pet Food Institute Letter of February 4, 2003 responding to FDA Notice of Proposed Rulemaking entitled "Substances Prohibited From Use in Animal Food or Feed; Animal Proteins Prohibited in Ruminant Feed.")

---

[1]  Menu Foods' source raw materials from various animal groups including those from ruminant animals are, or were susceptible to contracting BSE.

89. Additionally, Menu Foods Chief Financial Officer sold about half of his shares (about 14,000 shares) in the company on February 26, 2007 and February 27, 2007 just weeks before the recall for $89,900. The shares are worth a fraction of that today. (http://cbs13.com/pets/local_story_101142419.html).

90. Menu Foods supplies the P&G Defendants' pet food products at issue which are subject to the recall

91. Defendants P&G and The Iams Company (collectively, "the P&G Defendants") caused their brands of the consumer products at issue, to be manufactured, and marketed, distributed and sold to consumers including Plaintiffs, in Colorado and throughout the United States.

92. Jim McClurg, an Iams' Product Supply unit Vice President, has previously stated, "We are committed to providing dog and cat owners with top quality wet and dry nutrition, which is why we selected Menu Foods, a very strong company with core competencies in the production of wet dog and cat foods." (http://www.menufoods.com/ir/arc_26.html, retrieved on Mar 23, 2007 via www.google.com, cached entry.)

93. Defendants, P&G and Iams have admitted that cats and dogs in the United States have become sick and developed signs of kidney failure, including loss of appetite, vomiting, and lethargy from consuming its pet food products at issue, and have advised consumers to stop using the affected products immediately and seek assistance of a veterinarian where appropriate.

94. Defendant Wilbur-Ellis provided pet food manufacturers including, but not limited to American Nutrition, Inc. rice protein concentrate, which the U.S. Food & Drug Administration (FDA) has reported to contain melamine, and which the FDA has

identified as one source of the contamination in the pet food recalled by pet food companies.

95. Defendant American Nutrition, Inc. recalled on April 26, 2007 pet foods manufactured using Wilbur-Ellis rice protein.

96. Included under the American Nutrition, Inc. manufacturing are Defendants Blue Buffalo Company, Ltd., Defendants Sierra Pet Products, LLC, Defendant Natural Balance Pet Foods, Inc., and Defendant Diamond Pet Foods.

97. Defendant Blue Buffalo Ltd. caused their pet foods products at issue to be designed, manufactured, marketed, distributed, labeled, promoted, and/or sold to consumers including Plaintiffs potentially or actually causing harm to their pets.

98. Defendant Sierra Pet Products, LLC caused their pet foods products at issue to be designed, manufactured, marketed, distributed, labeled, promoted, and/or sold to consumers including Plaintiffs potentially or actually causing harm to their pets.

99. Defendant Natural Balance Pet Foods, Inc. caused their pet foods products at issue to be designed, manufactured, marketed, distributed, labeled, promoted, and/or sold to consumers including Plaintiffs potentially or actually causing harm to their pets.

100. Defendant Diamond Pet Food caused their pet foods products at issue to be designed, manufactured, marketed, distributed, labeled, promoted, and/or sold to consumers including Plaintiffs potentially or actually causing harm to their pets.

101. Diamond Pet Food markets Diamond and Diamond Naturals.

102. Diamond Pet Food initiated the most recent of the recalls to date on May 23, 2007 due to cross-contamination issues.

103. The contamination with the recent pet food recall was not the only time Diamond has had to recall their products. On December 20, 2005, they recalled products from the market after discovering that they were contaminated with aflatoxin, a toxic chemical by-product from the growth of fungus *Aspergillus flavus*, on corn and other crops.

104. The Hill's and Colgate Defendants caused their Prescription Diet™ m/d™ Feline dry pet food products to be manufactured, produced, marketed, distributed and sold to consumers including Plaintiffs potentially or actually causing harm to their pets.

105. Colgate and Hill's caused their other brands of the consumer products at issue, to be manufactured, and marketed, distributed and sold to consumers including Plaintiffs potentially or actually causing harm to their pets.

106. On March 30, 2007, Defendant Hill's Pet Nutrition, Inc. recalled Prescription Diet™ m/d™ Feline dry pet food products after learning that wheat gluten supplied from a specific manufacturing facility in China contained melamine.

107. Del Monte caused their pet foods products at issue to be designed, manufactured, marketed, distributed, labeled, promoted, and/or sold to consumers including Plaintiffs, potentially or actually causing harm to their pets.

108. On March 31, 2007, Del Monte recalled its first set of products at issue after that wheat gluten supplied to Del Monte Pet Products from a specific manufacturing facility in China contained melamine.

109. On April 6, 2007, Del Monte recalled a second set of products.

110. Nestle caused their pet foods products at issue to be designed, manufactured, marketed, distributed, labeled, promoted, and/or sold to consumers including Plaintiffs, potentially or actually causing harm to their pets.

111. On March 16, 2007, Nestle recalled its Mighty Dog 5.3 ounce pouch products.

112. A subsequent recall was initiated by Nestle on March 30, 2007 for its Alpo Brand Prime Cuts in Gravy canned dog food.

113. Sunshine Mills caused their pet foods products at issue to be designed, manufactured, marketed, distributed, labeled, promoted, and/or sold to consumers including Plaintiffs, potentially or actually causing harm to their pets.

114. On April 5, 2007 Sunshine Mills recalled their products after learning of the contamination with wheat gluten.

115. Cereal Byproducts caused their pet foods products at issue to be designed, manufactured, marketed, distributed, labeled, promoted, and/or sold to consumers including Plaintiffs, potentially or actually causing harm to their pets.

116. Cereal Byproducts shipped the recalled product to a total of three customers located in the Midwest between July 19, 2006 and March 14, 2007.

117. The FDA previously found melamine and/or melamine derivatives in Wilbur-Ellis Company's rice protein concentrate, which was purchased from the same Chinese supplier as Cereal Byproducts.

118. Defendant CJ Foods caused their pet foods products at issue to be designed, manufactured, marketed, distributed, labeled, promoted, and/or sold to consumers including Plaintiffs, potentially or actually causing harm to their pets.

119.  Defendant CJ Foods recalled its Blue Buffalo Spa Select Kitten Dry food on April 19, 2007 due to contamination of melamine in the rice protein concentrate.

120.  Defendant Chenango Valley Pet Foods caused their pet foods products at issue to be designed, manufactured, marketed, distributed, labeled, promoted, and/or sold to consumers including Plaintiffs, potentially or actually causing harm to their pets.

121.    Defendant Chenango Valley Pet Foods a contract manufacturer for but not limited to Defendant Doctors Foster and Smith, Evolve, Lick Your Chops, Shep, and Smart Pak.

122.    Defendant Chenango Valley Foods announced two recalls, one on April 26, 2007 and a subsequent recall on May 17, 2007 due to contamination of melamine in the rice protein concentrate.

123.  Defendant Foster and Smith, Inc. d/b/a Doctors Foster and Smith caused their pet foods products at issue to be designed, manufactured, marketed, distributed, labeled, promoted, and/or sold to consumers including Plaintiffs, potentially or actually causing harm to their pets.

124.    Defendant Foster and Smith, Inc. d/b/a Doctors Foster and Smith is a catalog pet product distributor and recalled their dog and cat foods because the products could contained rice protein concentrate tainted with melamine.

125.    Mars, Inc. and it subsidiary companies Masterfoods USA, Waltham, and Royal Canin caused their pet foods products at issue to be designed, manufactured, marketed, distributed, labeled, promoted, and/or sold to consumers including Plaintiffs, potentially or actually causing harm to their pets.

126.    Mars, Inc. now operates its three core businesses (snack food, pet care and main meal food) under the Masterfoods name in most parts of the world.

127.    Defendant Masterfoods USA manufactures and markets Confectionery/Snack food, Pet care and Food products.

128.  Defendants Mars, Incorporated claims to achieve its "fundamental understanding of pets' nutritional needs through Waltham."

129.    Defendant Waltham claims to be a world center of excellence in pet nutrition, behavior and care.

130.    Waltham is a manufacturer for Defendant Royal Canin.

131.    Defendant Royal Canin and its parent companies caused their pet foods products at issue to be designed, manufactured, marketed, distributed, labeled, promoted, and/or sold to consumers including Plaintiffs, potentially or actually causing harm to their pets.

132.    In addition to it's Waltham connection, Mars, Inc. and it subsidiary Masterfoods caused their pet foods products at issue to be designed, manufactured, marketed, distributed, labeled, promoted, and/or sold to consumers including Plaintiffs, potentially or actually causing harm to their pets including, but not limited to Kal-Kan and Pedigree pet foods.

133.    Defendant Petco is a retailer who caused pet foods products at issue to be, marketed, distributed, labeled, promoted, and/or sold to consumers including Plaintiffs, potentially or actually causing harm to their pets.

134.    Defendant Petsmart is a retailer who caused pet foods products at issue to be, marketed, distributed, labeled, promoted, and/or sold to consumers including Plaintiffs, potentially or actually causing harm to their pets.

135.    Defendant Safeway is a retailer who caused pet foods products at issue to be, marketed, distributed, labeled, promoted, and/or sold to consumers including Plaintiffs potentially or actually causing harm to their pets.

136.    Defendant Kroger is a retailer who caused pet foods products at issue to be, marketed, distributed, labeled, promoted, and/or sold to consumers including Plaintiffs, potentially or actually causing harm to their pets.

137.    Defendant Walmart is a retailer who caused pet foods products at issue to be, marketed, distributed, labeled, promoted, and/or sold to consumers including Plaintiffs potentially or actually causing harm to their pets.

138.    The retailers continued to sell contaminated food well after the recalls were announced according to reports by the FDA inspected about 400 stores and still found some dog and cat foods that had been recalled.

139.    There were reports that recalled food remained on shelves months after the recall efforts were made and were even discounted for quick sale.

140.    After sources of toxins were identified, recalls continued to be widespread not only because of toxins present in the food ingredients, but because of cross-contamination issues, indicating a clear lack of concern for making safe products.

141.    The pet food products at issue are defectively designed and made, and are toxic, poisonous or unreasonably dangerous to pets who consume it.

142.  Due to the composition of the products (e.g., the concentration of a tainted wheat gluten ingredient or rice meal), the products are not usable for their intended purposes, and when used, cause a significant risk of bodily harm, including severe or fatal bodily harm to the pet.

143.  Said defects and inherent dangers existed in the pet food products at issue and in their tainted ingredients, at the time the products left the control of the Defendants, and at the time Plaintiff and the members of the Classes purchased said products (though they could not discover same at the time they purchased and used the products).

144.  Defendants had a duty of care to Plaintiffs and purchasers of the pet food products at issue; Defendants had a duty to design, manufacture, test, market, distribute, label, promote, and sell, a safe product and/or ingredient, and a duty to warn or disclaim any potential dangers which derive from the unreasonable dangers posed by the product and/or ingredient.

145. As a result of the Defendants' respective acts and omissions alleged herein, Plaintiffs and other members of each Class have been damaged, for example, in amounts equal to the cost of the pet food products at issue, veterinarian bills, cremation and/or funeral expenses, and other, compensatory and punitive damages.

146.  Plaintiffs and other affected pet owners were, in effect, stuck with opened and/or unopened "leftovers" of recalled pet food products at issue following the Menu Foods recall, and/or had their pets consume pet food not fit for consumption that they purchased from Defendant retailers.

## IV. CLASSES

## CLASS A-DESTROYED ANIMALS

147.  Plaintiff Emily Tompkins bring this action individually and pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities who purchased the pet food products at issue, and whose pets subsequently died as a result of the consumption of the food.

## CLASS B-INJURED ANIMALS

148.  Plaintiff Virginia Koslow bring this action individually and pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of All persons and entities who purchased pet food products at issue, and whose pets subsequently were affected and are continuing veterinary, dietary, or any other treatment as a result of the consumption of the food.

## CLASS C-PRECAUTIONARY TESTING

149.  Plaintiff Beth Dombroski brings this action individually and pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of class of all persons and entities who purchased the pet food products at issue, and whose pets were given precautionary testing as a result of the recall.

## CLASS D-PURCHASERS

150.  All listed Plaintiffs bring this action individually and pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities who purchased, from a retail store operated and/or owned by retailers, a pet food product recalled March 2007 through the present time.

**CLASSES A-D**

151. Excluded from each Class are the officers and employees of each of the Defendants, Plaintiffs' counsel, and any judge presiding over this action.

152. Plaintiffs meet the requirements of Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure.

153. Plaintiffs do not know the exact size of the Classes, since this information is largely in Defendants' exclusive control. But based on the nature of the trade and commerce involved, Plaintiffs believe that the Classes each number at least in the thousands and that the members of each class are geographically dispersed throughout the State of Colorado, or alternatively, throughout the U.S. including in Colorado. Therefore, joinder of the members of each Class would be impracticable, and class treatment is the superior method for fairly and efficiently adjudicating this controversy.

154. Plaintiffs' claims are typical of other Class members' claims because all the respective Class members were injured through the uniform misconduct described herein.

155. Common legal and factual questions among and within the respective classes exist, such as:

    a. Whether the respective Defendants caused to be manufactured, distributed, marketed, and sold, the pet food products at issue;

    b. Whether the pet food products at issue are unreasonable dangerous, unfit for pet consumption; and

     c.     Whether Defendants' conduct caused injury in fact to Plaintiffs and the members of each Class.

156. Plaintiffs can and will fairly and adequately represent and protect the respective Class members' interests, and have no interests that conflict with or are antagonistic to the any of the Class members' interests. One or more of Plaintiffs' attorneys are experienced and competent in class action litigation.

157. Class certification of the respective, alternative classes is appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because a class action is the superior procedural vehicle for the fair and efficient adjudication of the claims asserted given that:

     a.     Common questions of law and fact overwhelmingly predominate over any individual questions that may arise among or within the respective classes and, consequently, enormous economies to the court and parties exist in litigating the common issues, for each class, on a class-wide basis instead of on a repetitive individual basis;

     b.     Class treatment is required for optimal deterrence against, and compensation for, Defendants' wrongful conduct alleged herein; and

     c.     The aggregate volume of the claims of each Class, whether considered in a national class or, alternatively, in a Colorado class, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation, and no unusual difficulties are likely to be encountered in this

class action's management in that all legal and factual questions are common to each Class.

158. Plaintiffs' claims are typical of the other Class members' claims because Defendants injured Plaintiffs and the respective Class members in the same manner.

159. Class certification is appropriate pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure because prosecution of separate actions would create a risk of adjudication with respect to individual members of the respective classes, which may, as a practical matter, dispose of other class members' interests who aren't parties to the adjudication or which may substantially impair or impede individual class members' ability to protect their interests. Separate actions prosecuted by individual class members would also create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

160. Class certification, of Class A through Class D, is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants have acted on grounds generally applicable to the members of each Class.

## V. CAUSES OF ACTION

161. Each of the preceding paragraphs are re-alleged and incorporated as if set forth in full in each of the following Causes of Action, which are, to the extent the law requires, alleged in the alternative.

## FIRST CAUSE OF ACTION – NEGLIGENCE

162. Plaintiffs has injuries, damages, and or losses;

163. Defendants were negligent;

164.  Defendants' negligence was causes of Plaintiffs injuries, damages, and/or losses.

165.  Xuhou Anying Biologic Technology Development Company Defendants developed, manufactured, produced, distributed, exported, and/or imported raw materials to include wheat gluten, rice protein and/or any other tainted ingredients by Defendants as described herein and recalled in March 2007 or thereafter.

166.  Binzhou Futian Biology Technology Co. Ltd. Defendants developed, manufactured, produced, distributed, exported, and/or imported raw materials to include wheat gluten, rice protein and/or any other tainted ingredients by Defendants as described herein and recalled in March 2007 or thereafter.

167.  Chem Nutra Defendants produced, developed, designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter.  Chem Nutra Defendants developed, manufactured, produced, distributed, exported, and/or imported raw materials to include wheat gluten, rice protein and/or any other tainted ingredients by Defendants as described herein and recalled in March 2007 or thereafter.  Chem Nutra Defendants imported ingredients from Xuhou Anying Technology Development Company.

168.  Wilbur Ellis Defendants produced, developed, designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter.  Wilbur Ellis Defendants developed, manufactured, produced, distributed, exported, and/or imported raw materials to include wheat gluten, rice protein and/or any other tainted ingredients by Defendants as described herein and recalled in March 2007 or thereafter.  Wilbur

Ellis Defendants imported ingredients from Binzhou Futian Biology Technology Co. Ltd.

169. Menu Foods made the food products subject to the Menu Foods recall. Defendant Menu Foods produced, developed, designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter. Defendant Menu Foods developed, manufactured, produced, distributed, exported, and/or imported raw materials to include wheat gluten, rice protein and/or any other tainted ingredients by Defendants as described herein and recalled in March 2007 or thereafter.

170. Defendants, The Procter & Gamble Company and The Iams Company produced, distributed, marketed and sold the recalled pet food sold under their brand names, e.g., Iams and Eukanuba. Defendants produced, developed, designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter. Defendants developed, manufactured, produced, distributed, exported, and/or imported raw materials to include wheat gluten, rice protein and/or any other tainted ingredients by Defendants as described herein and recalled in March 2007 or thereafter.

171. The Colgate and Hill's Defendants produced, distributed, marketed and sold pet food products such as: Prescription Diet™ m/d™ Feline and Science Diet® Savory Cuts®. Defendants produced, developed, designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter. Defendants developed, manufactured,

produced, distributed, exported, and/or imported raw materials to include wheat gluten, rice protein and/or any other tainted ingredients by Defendants as described herein and recalled in March 2007 or thereafter.

172.  Del Monte Defendants produced, distributed, marketed and sold pet food products such as: Kibbles 'n Bits, Milk Bone, Pup-Peroni, Meaty Bone, Snausages, Natures Recipes, Gravy Train, Canine Carry Outs, Jerky treats, 9Lives, Meow Mix, Pounce. Defendants produced, developed, designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter.  Defendants developed, manufactured, produced, distributed, exported, and/or imported raw materials to include wheat gluten, rice protein and/or any other tainted ingredients by Defendants as described herein and recalled in March 2007 or thereafter.

173.  Nestle Purina Defendants produced, developed, designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter.  Defendants developed, manufactured, produced, distributed, exported, and/or imported raw materials to include wheat gluten, rice protein and/or any other tainted ingredients by Defendants as described herein and recalled in March 2007 or thereafter.

174.  Sunshine Mills Defendants produced, developed, designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter.  Defendants developed, manufactured, produced, distributed, exported, and/or imported raw materials to

include wheat gluten, rice protein and/or any other tainted ingredients by Defendants as described herein and recalled in March 2007 or thereafter.

175. Natural Balance Defendants produced, developed, designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter. Defendants developed, manufactured, produced, distributed, exported, and/or imported raw materials to include wheat gluten, rice protein and/or any other tainted ingredients by Defendants as described herein and recalled in March 2007 or thereafter.

176. Cereal Byproducts Defendants produced, developed, designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter. Defendants developed, manufactured, produced, distributed, exported, and/or imported raw materials to include wheat gluten, rice protein and/or any other tainted ingredients by Defendants as described herein and recalled in March 2007 or thereafter.

177. Royal Canin Defendants produced, developed, designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter. Defendants developed, manufactured, produced, distributed, exported, and/or imported raw materials to include wheat gluten, rice protein and/or any other tainted ingredients by Defendants as described herein and recalled in March 2007 or thereafter.

178. CJ Foods Defendants produced, developed, designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter. Defendants developed, manufactured,

produced, distributed, exported, and/or imported raw materials to include wheat gluten, rice protein and/or any other tainted ingredients by Defendants as described herein and recalled in March 2007 or thereafter.

179. Smart Pak Defendants produced, developed, designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter. Defendants developed, manufactured, produced, distributed, exported, and/or imported raw materials to include wheat gluten, rice protein and/or any other tainted ingredients by Defendants as described herein and recalled in March 2007 or thereafter.

180. Chenango Valley Pet Foods Defendants produced, developed, designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter. Defendants developed, manufactured, produced, distributed, exported, and/or imported raw materials to include wheat gluten, rice protein and/or any other tainted ingredients by Defendants as described herein and recalled in March 2007 or thereafter.

181. American Nutrition, Inc. Defendants produced, developed, designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter. Defendants developed, manufactured, produced, distributed, exported, and/or imported raw materials to include wheat gluten, rice protein and/or any other tainted ingredients by Defendants as described herein and recalled in March 2007 or thereafter.

182. Diamond Pet Foods Defendants produced, developed, designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter.  Defendants developed, manufactured, produced, distributed, exported, and/or imported raw materials to include wheat gluten, rice protein and/or any other tainted ingredients by Defendants as described herein and recalled in March 2007 or thereafter.

183. Foster and Smith, Inc. produced, developed, designed, manufactured, marketed, distributed, labeled, promoted, and/or sold by the Defendants as described herein, and recalled in March 2007 or thereafter.  Defendants developed, manufactured, produced, distributed, exported, and/or imported raw materials to include wheat gluten, rice protein and/or any other tainted ingredients by Defendants as described herein and recalled in March 2007 or thereafter.

184. The Defendants captioned in this Cause of Action breached their respective duties and duties of care to Plaintiffs and other purchasers of said pet food products at issue, (e.g., to warn, and to design, manufacture, produce, market, distribute, supply and/or sell pet food products and/or ingredients at issue that are reasonably safe for pet consumption, for their intended purposes, and for purposes that do not injure the users of the products) including their respective aforementioned duties (*see General Allegations*).

185. Said Defendants' respective breaches of the aforementioned duties in the course of failing to warn, and in designing, making, producing, distributing, supplying, marketing and/or selling the pet food products and/or ingredients at issue, caused Plaintiffs and members of the Classes, actual, and compensatory damage.

186.  All Defendants listed in this complaint and those who have yet to be named have been negligent and caused injuries, damages, and/or losses.

## SECOND CAUSE OF ACTION – STRICT LIABILITY

187.  Defendants were manufacturers of the various pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients.

188.  Defendants were engaged in the business of selling such pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients for resale, use or consumption;

189.  Defendants sold the pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients.

190.  The pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients were defective and, because of the defect, the pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients was unreasonably dangerous Plaintiffs and their pets who might reasonably be expected to use, consume, or be affected by the pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients.

191.  The pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients was defective at the time it was sold by Defendants or left their control;

192. The pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients was expected to reach the user or consumer without substantial change in the condition in which it was sold;

193. The pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients did reach the user or consumer without substantial change in the condition in which it was sold;

194. Plaintiffs were people who would reasonably be expected to purchase, use, consume or be affected by the pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients.

195. Plaintiffs had injuries, damages, and/or losses; and

196. The defect in the pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients was a cause of Plaintiffs' injuries, damages, and/or losses.

197. Each of the Defendants captioned above in this Cause of Action caused pet food products at issue and/or tainted ingredients therein to be placed into the stream of commerce and sold to Plaintiffs and other members of the all Classes. Plaintiffs and the above-named Class members could not, and should not have reasonably expected the pet food products at issue to contain poisonous and/or abnormally dangerous ingredients that the products did and/or were likely to contain.

198.  Plaintiffs and the above-named Class members were damaged as a proximate result of Defendant's conduct.

199.  Said Defendants, as a result of their above-described conduct, are strictly liable to Plaintiffs and the above-named Class members.  (*See* STATEMENT OF FACTS, *General Allegations*).

## THIRD CAUSE OF ACTION – BREACH OF WARRANTY

200.  Defendants sold various pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients;

201.  Defendants expressly warranted the pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients to include but not limited to providing 100% complete and balanced nutrition, nutritionally complete for growth and maintenance, and a delicious, nutritionally complete meal…;

202.  Plaintiffs are people who were reasonably expected to purchase, use, consume or be affected by the pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients;

203.  The pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients was not as warranted;

204.  This breach of warranty caused Plaintiffs injuries, damages, and/or losses; and

205. Within a reasonable time after Plaintiffs discovered or should have discovered the alleged breach of warranty, Plaintiffs notified Defendants of such breach.

206. Defendants expressly warranted that their now-recalled pet food products are pet food and are nourishing, healthy, and/or suitable for consumption.

207. However, the recalled products purchased by Plaintiffs are not in fact pet food nor are they nourishing, healthy, or suitable for consumption; the products are poisonous, are unfit for consumption, and/or are likely to cause illness or death when consumed.

208. Defendants expressly warranted that their products which they recalled, and that are pet food and are suitable for consumption. However, such products purchased are unfit as pet food and unfit for consumption, and/or are likely to cause illness or death when consumed.

209. Defendants expressly warranted that their now-recalled pet food products are pet food and are nourishing, healthy, and/or suitable for consumption. However, such product purchased are not in fact pet food nor are they fit for consumption, and/or are likely to cause illness or death when consumed.

210. The affected products by Defendants subject to the above-described recalls are not merchantable or fit for their particular purpose.

211. Had Plaintiffs or the other members of the Classes known these facts, they would never have purchased the pet food products at issue.

212. Defendants breached their respective implied warranties of merchantability and fitness for a particular purpose, and express warranties, which are part of the basis of the bargain for the product purchase.

213. As a proximate result of Defendants' aforesaid breaches of warranty and conduct, Plaintiffs and Class members were damaged.

## FOURTH CAUSE OF ACTION – BREACH OF EXPRESS CONTRACT

214. Defendants entered into a contract with Plaintiffs to provide healthy and safe pet food to Plaintiffs; and

215. Defendants failed to provide health and safe pet food to Plaintiff.

216. Plaintiffs substantially performed their part of the contract.

217. Plaintiffs purchased pet food sold by Defendants inclusive of the time period between September 2006 and to the present time. The other members of the Purchasers Class bought pet food products at issue from one or more of the Retail Defendants between 2006 to present.

218. Said purchases were made from the Retail Defendants based on the mutual understanding of the parties (i.e., of each Retail Purchase Class member, and of each Retail Defendant), at the time of sale, that the food was, as represented, safe for consumption and was in fact truly pet "food".

219. However, the Retail Defendants sold the pet food products at issue, which were not safe for consumption, were not in fact truly pet "food" and caused dogs and cats to become ill and/or die.

220. Each of the Retail Defendants, by selling Plaintiff and Retail Purchase Class members pet food that in fact was not truly pet "food", and/or was not safe for consumption, breached their contracts for the sale of the pet food.

221. As a result of said breach and/or material mutual mistake of fact of the parties, Plaintiff and other Retail Purchase Class members were damaged, and/or the

contracts for the sale of the pet food should be rescinded and Plaintiff and the Retail Purchase Class are due a full refund of the pet food products purchased from the Retail Defendants and restitution or compensatory damages resulting therefrom.

**FIFTH CAUSE OF ACTION – BREACH OF EXPRESS NON-INSUREANCE CONTRACT BY BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING**

222.  Defendants entered into a contract with Plaintiffs to provide healthy and safe pet food; and

223.  Defendants failed to act in good faith and to deal fairly with Plaintiffs in performing, enforcing, or providing healthy and safe pet food.

**SIXTH CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION**

224.  Defendants sold various pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients;

225.  Defendants engaged in the business of selling the various pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients for resale, use or consumption;

226.  Defendants misrepresented a fact concerning the character or quality of the various pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients that would be material to potential purchasers or users of the product;

227.  The misrepresentation was made to potential purchasers or users as members of the public at large;

228.  As a purchaser or user, Plaintiffs reasonably relied on the misrepresentation;

229.  Plaintiffs were people who would reasonably be expected to purchase, use, consume, and/or be affected by the various pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients; and

230.  Plaintiffs have injuries, damages, and/or losses caused by the reasonable reliance of Plaintiffs on the misrepresentation.

## SEVENTH CAUSE OF ACTION – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

231.  Defendants sold various pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients;

232.  Defendants impliedly warranted the various pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients to be suitable and/or fit for the particular purpose of feeding healthy and safe pet food to Plaintiffs pets;

233.  Plaintiffs are people who was reasonably expected to purchase, use, consume or be affected by the various pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients;

234.  The various pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted

ingredients was not suitable and/or fit for the particular purpose for which it was warranted;

235.  This breach of warranty caused Plaintiffs injuries, damages, and/or losses; and

236.  Within a reasonable time after Plaintiffs discovered or should have discovered the alleged breach of warranty, Plaintiffs notified Defendants of such breach.

## EIGHTH CAUSE OF ACTION – MANUFACTURER'S LIABILITY BASED ON NEGLIGENCE

237.  Defendants manufactured various pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients;

238.  Defendants were negligent by failing to exercise reasonable care to prevent the various pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients from creating an unreasonable risk of harm to the person or property of one who might reasonably be expected to purchase, use, consume, and/or be affected by the various pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients while it was being used in the manner the defendant might have reasonably expected;

239.  Plaintiffs were people Defendants should reasonably have expected to purchase, use, consume, and/or be affected by the various pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients; and

240.  Plaintiffs had injuries, damages, and/or losses that were caused by Defendant's negligence, while the various pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients was being used in a manner the defendant should reasonably have expected.

## NINTH CAUSE OF ACTION – LIABILITY FOR INJURY FROM FOOD OR BEVERAGE IN SEALED CONTAINER

241.  Defendants manufactured, packaged, bottled, and/or placed upon the market the product for human to give to their pet for consumption;

242.  Plaintiffs were people Defendants should reasonably have expected to purchase, use, consume, and/or be affected by the product;

243.  Because of negligence of Defendants the package and/or bottle contained a foreign substance when it left the possession of Defendants;

244.  Plaintiffs pets ate the food with the foreign substance in it; and

245.  The eating of the food caused Plaintiffs and their pets injuries, damages, and/or losses.

## TENTH CAUSE OF ACTION – BREACH OF IMPLIED WARRANTY OF MERCHANTABLITIY

246.  Defendants sold various pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients;

247.  Plaintiffs are people who reasonably expected to purchase, use, consume or be affected by the product;

248.  Defendants are a merchants with respect to the type of product involved herein;

249.  The various pet food products recalled in March 2007 or thereafter which included raw materials of wheat gluten, rice protein and/or any other tainted ingredients was not of merchantable quality at the time of sale;

250.  This breach of warranty caused Plaintiffs injuries, damages, and/or losses; and

251.  Within a reasonable time after Plaintiff discovered or should have discovered the alleged breach of warranty, Plaintiff notified the defendant of such breach.

## ELEVENTH CAUSE OF ACTION –FALSE REPRESENTATION

252.  The Defendants made a false representations of a past or present facts;

253.  The fact was material;

254.  Defendants made the representation knowing it to be false or they were aware that they did not know whether it was true or false;

255.  Defendants made the representation with the intent that Plaintiffs would rely on the representation;

256.  Plaintiffs relied on the representation;

257.  Plaintiffs' reliance was justified; and

258.  This reliance caused injuries, damages, and/or losses to Plaintiffs.

259.  Defendants had a duty to disclose that the pet food products at issue are defective, dangerous, and/or cause or reasonably could cause pet injury or death.

260.  However, each of the Defendants failed to disclose these facts to members of the Class members, and intended that they rely on these omitted facts at the time they purchased the pet food products at issue at retail inclusive of the time period from February 20, 2007 to the present time.

261. Plaintiffs would have never purchased these products had they known these omitted facts – and many of their pets, would not have died or suffered injury as a result.

262. Plaintiffs and Class members were damaged as a proximate result of these omissions.

## TWELTH CAUSE OF ACTION – NONDISCLOSURE OR CONCEALMENT

263. Defendants concealed a past or present fact and/or failed to disclose a past or present fact which they had a duty to disclose;

264. The fact was material;

265. Defendants concealed it and/or failed to disclose it with the intent of creating a false impression of the actual facts in the mind of Plaintiffs;

266. Defendants concealed and/or failed to disclose the fact with the intent that Plaintiffs take a course of action they might not take if they knew the actual facts;

267. Plaintiff took such action or decided not to act relying on the assumption that the concealed and/or undisclosed fact did not exist or was different from what it actually was;

268. Plaintiffs' reliance was justified; and

269. This reliance caused injuries, damages, losses to Plaintiff.

## THIRTEENTH CAUSE OF ACTION – DECEPTIVE TRADE PRACTICES– COLORADAO CONSUMER PROTECTION ACT

270. Defendants engaged in and/or caused another to engage in a deceptive trade practice;

271.  The deceptive trade practice occurred in the course of Defendants' business, vocation, and/or occupation;

272.  The deceptive trade practice significantly impacted the public as actual or potential consumers of Defendants' goods, services, and/or property;

273.  Plaintiffs were an actual or potential consumer of Defendants' goods, services, and/or property or was injured in the course of their business or occupation as a result of the deceptive trade practice; and

274.  The deceptive trade practice caused actual damages or losses to Plaintiffs

**FOURTEENTH CAUSE OF ACTION – OUTRAGEOUS CONDUCT**

275.  Defendants engaged in extreme and outrageous conduct;

276.  Defendants did so recklessly or with the intent of causing the plaintiff severe emotional distress; and

277.  Defendants' conduct caused Plaintiffs severe emotional distress.

**FIFTEENTH CAUSE OF ACTION – INTENTIONAL INTERFERENCE WITH CONTRACTUAL OBLIGATIONS**

278.  Plaintiffs had a contract with Defendants in which Defendants agreed to provide healthy, nutritionally complete, safe pet food;

279.  Defendants knew or reasonably should have known of the contract;

280.  Defendants by words or conduct, or both, intentionally caused other Defendants not to perform or to terminate their contract with Plaintiffs and/or interfered with other Defendants' performance of the contract, thereby causing other Defendants' not to perform and/or to terminate the contract with Plaintiffs.

281.  Defendant's interference with the contract was improper; and

282.  Defendant's interference with the contract caused Plaintiff damages and/or losses.

## SIXTEENTH CAUSE OF ACTION – CIVIL CONSPIRACY

283.  Defendants with other Defendants agreed, by words or conduct, to accomplish an unlawful goal and/or accomplish a goal through unlawful means;

284.  One or more unlawful acts were performed to accomplish the goal and/or one or more acts were performed to accomplish the unlawful goal;

285.  Plaintiffs had injuries, damages, and/or losses; and

286.  Plaintiffs' injuries, damages, and/or losses were caused by the acts performed to accomplish the goal.

## SEVENTEENTH CAUSE OF ACTION – UNJUST ENRICHMENT

287.  The revenues and profits flowing to and retained by the Defendants from the sale of the recalled pet food products at issue inured to their benefit.

288.  Each of the Defendants unjustly retained gains arising from the sale of said pet food products, which were unsafe for pet consumption and not fit for sale, were less than the product advertised, represented, and purchased and/or were not fit for their ordinary and intended purpose.

289.  The Defendants' retention of financial gains from the sale of said pet food products has unjustly enriched each of them at the expense of Plaintiffs and the members of each Class, who are entitled to restitution, and disgorgement of the Defendants' respective ill-gotten gains arising from the sale of the products as a result.

290. The Defendants' retention of monies received by virtue of their roles in causing said pet food products to be sold to Plaintiffs and the other class members violates the principles of equity and good conscience.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all matters so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter judgment in the respective Class members' favor and against Defendants, as follows:

A.   That this Court enter an order certifying this action as a class action for each Class defined above or that may be defined in the course of this action, appointing Plaintiff Tompkins as class representatives for the Class A, Plaintiff Dombroski as class representative for the Class B, Plaintiff Koslow as class representative for Class C, All Plaintiffs listed as class representatives for Class D, and the Plaintiffs' counsel as class counsel;

B.   That this Court find that the Defendants violated applicable law and are therefore liable under said laws as alleged above;

C.   That this Court declare that  Defendants acted with reckless disregard for Plaintiffs, and that Plaintiffs and the members of each Class are entitled to a purchase price refund of the pet food products at issue;

D.   That this Court award Plaintiffs and the members of each Class damages, including actual, incidental, compensatory, consequential and future damages (e.g., cost of veterinarian bills, medication, cremation and funeral expenses, and pet food) and/or refunds of the pet food products at issue,

interest thereon, and injunctive relief including medical monitoring relief for affected surviving pets;

E.      That this Court award punitive damages against Defendants for Causes of Action above for which such damages may be had;

F.      That this Court determines that Defendants were unjustly enriched and award restitution and/or disgorgement of their respective ill-gotten gains;

G.      That this Court require each Defendant to account for all revenues and/or profits improperly received as a result of the aforementioned conduct, enjoin each Defendant from dispersing said monies, and impose a constructive trust on said monies;

H.      That this Court award Plaintiffs' counsel reasonable attorneys' fees and costs;

I.      That this Court order any other relief as it deems just, equitable, and proper.


FOR THESE REASONS, Plaintiff requests this Court to grant such further relief as this Court deems just.

RESPECTFULLY submitted this 13th day of July, 2007.

**THOMAIDIS LAW, LLC**

By:   s/    Jennifer Reba Thomaidis
THOMAIDIS LAW, LLC
1866 Vine Street
Denver. CO 80206
(303) 322-4355

Paul Gordon
PAUL GORDON, LLC
650 South Cherry Street, Suite 835
Denver, Colorado 80246
(303) 756-0800
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on the 13th day of July, 2007, a true copy of this complaint was served by the CM/ECF system to:

Rachel L. Carnaggio, Esq.
Godfrey & Lapuyade, P.C.
9557 South Kingston Court
Englewood, Colorado 80112
Fax:  303-228-0701
E-mail: Carnaggio@godlap.com
*Attorneys for Menu Foods Midwest Corporation, Menu Foods Income Fund, Menu Foods Limited, Menu Foods Inc., and Menu Foods Holdings, Inc.*

/s/    Jennifer Reba Thomaidis